Harlan E. Baxter and Imogene Baxter v. Commissioner. Lovell J. Proby and Eva M. Proby v. Commissioner.
Baxter v. Commissioner
Docket Nos. 4686-67, 5512-67.
United States Tax Court
T.C. Memo 1969-87; 1969 Tax Ct. Memo LEXIS 209; 28 T.C.M. (CCH) 487; T.C.M. (RIA) 69087; May 5, 1969, Filed Joseph H. Tretheway, 1418 IBM Bldg., Seattle, Wash., for petitioners in docket No. 4686-67. George Constable for petitioners in docket No. 5512-67. Harold E. Patterson for respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Deficiencies have been determined by the Commissioner in the income tax of petitioners in the following taxable years and amounts: Petitioner
Docket No.
1962
1963
1964
Harlan E. and Imogene Baxter
4686-67
$1,609.98
$5,231.23
$7,130.11
Lovell J. and Eva M. Proby
5512-67
2,736.96
4,411.52
The common issue before *210 the Court in these consolidated cases is whether respondent has erred in treating a purported sales transaction entered into between Baxter and Proby as producing ordinary income to both. Findings of Fact Such facts as have been agreed to by the parties in each docket are accordingly found as fact. The petitioners Harlan E. and Imogene Baxter are husband and wife and at the time of filing their petition resided at Bellevue, Washington. They filed joint Federal income tax returns for the calendar years 1962, 1963, and 1964 with the district director of internal revenue at Tacoma, Washington. The petitioners Lovell J. and Eva M. Proby are husband and wife and at the time of filing their petition resided at Seattle, Washington. They filed joint Federal income tax returns for the calendar years 1963 and 1964 with the district director of internal revenue at Tacoma, Washington. Beginning in 1945, petitioner Lovell J. Proby (hereinafter referred to as Proby) engaged in the sale of traffic signal equipment in Oregon and Washington. He was first enfranchised to sell traffic signal equipment for Eagle Signal Company (hereinafter referred to as Eagle) on a commission basis in October *211 1945. From 1955 until 1959, petitioner Harlan E. Baxter (hereinafter referred to as Baxter) was traffic engineer for the City of Eugene, Oregon, earning $460 per month. During this time he became acquainted with Proby. In February of 1959, Proby offered Baxter a position with him selling traffic signal equipment, principally for Eagle. Baxter was given a draw of $600 per month, which was offset against commissions earned at the end of the year. The draw and the commissions Baxter earned were nearly equal. On November 1, 1960, Proby and Baxter entered into a joint venture agreement which was executed on January 3, 1961, by both of the parties. The purpose of the joint venture was to sell all lines of traffic and 488 public safety equipment then handled by Proby as manufacturer's representative in the States of Oregon and Washington. Pursuant to the joint venture agreement, for the calendar year 1960 Baxter was to receive 42 percent of the gross commissions, less normal operating expenses, and Proby was to receive 58 percent of the gross commissions from the business, less normal operating expenses. Thereafter Baxter was to receive an annual increase in his percentage until *212 1964 when the commissions were to be divided equally and to continue on an equal basis thereafter. The principal franchise under which Proby had operated prior to the entry into the joint venture in November of 1960 was the one from Eagle. The franchise from Eagle, which was in effect when the joint venture was created on November 1, 1960, and under which the joint venture first operated, was dated August 1, 1954. The terms of the franchise provided it was to continue in effect unless terminated on 30 days' written notice by either Eagle or Proby. The franchise between Proby and Bell & Gustus, Inc., which was dated January 6, 1959, was also cancellable by either party on 30 days' notice. The franchise between Flexible Safety Zoning Co., Inc., and Proby, dated March 15, 1961, provided that the agreement would be in effect for one year and would be automatically renewed for like periods as they expired from time to time, although either party could cancel the franchise upon 60 days' notice by registered mail. Pursuant to the terms of the Eagle franchise to Proby, dated August 1, 1954, and the changes and extensions thereof made during the years at issue, Proby had no right to a commission *213 on equipment sold until Eagle received and approved the order. Furthermore, the Eagle franchises were nontransferable by Proby without the prior approval by Eagle of the proposed transferee. Proby had been the owner of some cherry orchards and farm land for several years prior to 1961. In 1962, he desired to leave the business of selling traffic signal equipment and devote his entire time to raising cherries. He conveyed this information to Baxter in early 1962 and discussed with him the possible sale of his (Proby's) interest in the joint venture to him. In March or April of 1962, Proby consulted his attorney and accountant with respect to the sale of his interest in the joint venture. He discussed the matter with Baxter and told him there would be tax benefits to him (Proby) if he sold on a capital gain basis. Proby had an attorney prepare a conditional sale contract whereby Proby agreed to sell his interest in the joint venture to Baxter and Baxter agreed to buy the interest of Proby therein for a sum equal to onethird of the gross commissions from the business for a period of 48 months beginning June 1, 1962. The property covered by the conditional sale contract was the franchises, *214 including but not limited to the Eagle franchise. The sale contract was delivered by Proby to Baxter prior to its execution. Proby discussed the matter with Baxter. Baxter kept the contract for 4 days, after which he returned and executed it together with Proby on May 25, 1962. Baxter knew when he executed the sale contract on May 25, 1962, that the Eagle, the Bell & Gustus, Inc., and the Flexible Safety Zoning Co., Inc., franchises could be cancelled on 30 or 60 days' notice by either party thereto. On June 4, 1962, after the sale contract was executed, Baxter and Proby recorded the contract with the County Auditor of King County, Washington. On the same day, Baxter acknowledged before a notary public that he signed a certificate of firm name, whereby Baxter was doing business as Proby-Baxter, Manufacturer's Agents, at 422 Smith Otwer, Seattle, Washington, and that he was the only person conducting the business or having an interest therein. He also recorded this document with the County Clerk of King County, Washington. Proby took no part in the business after June 1, 1962, except on three occasions to help petitioner Baxter during illnesses and while he took a vacation. *215 Eagle was not officially advised that Proby had sold his franchise from them to Baxter. The Eagle franchise remained in the name of Proby until July 1, 1963, to prevent cancellation of the franchise by Eagle and to provide Proby with security for payment by Baxter of the agreed purchase price for the business. The commission checks from Eagle were mailed by Proby from June 1962 to at least the end of 1964, to Baxter at his office. Accompanying each check was a statement of commissions due which was detached and retained by Baxter. The check from Eagle was then remailed by Baxter to Proby. Proby cashed 489 each check, retained his one-third and remitted the remainder to Baxter by check from his account. The same procedure was followed during the life of the sale contract. Title to the interest of Proby in the joint venture and the property covered thereby was retained by Proby during the life of the sale contract solely as a security measure to insure payment of the purchase price of Proby's interest in the joint venture agreed upon. Additional franchises, other than the one dated August 1, 1954, were issued by Eagle on July 1, 1963, to Proby and on December 1, 1964, to Proby *216 and Baxter to reflect price changes. The original franchise was never cancelled by Eagle for any reason, but was merely replaced to reflect certain changes. The name of Proby was included on the franchises as a security measure to make it appear that Proby was actively engaged in the business and thereby to prevent Eagle from knowing of the sale by Proby of his interest in the joint venture and the franchise. Proby reported the transaction with Baxter occurring on May 25, 1962, as the sale of a capital asset and reported in his 1963 and 1964 Federal income tax returns the one-third of the gross commissions received from the sale of the business as capital gains. On Baxter's Federal income tax returns for 1962, 1963, and 1964, he excluded onethird of the gross commissions earned from the traffic signal business which was paid to Proby. Ultimate Findings of Fact The transaction between Proby and Baxter reflected in the contract dated May 25, 1962, was a sale by Proby of a capital asset consisting of his interest in the joint venture between himself and Baxter, and a purchase of that interest by Baxter for a sum equal to one-third of the gross commissions earned from the business *217 for a period of 48 months beginning June 1, 1962. After June 1, 1962, all commissions from the sales of traffic equipment under the three franchises were due to the efforts of Baxter except for the three occasions when Proby assisted him while he was ill and on vacation. Baxter, after June 1, 1962, exercised all control and management over the business previously operated by Proby and Baxter. The one-third of the gross commissions earned from the operation of the business by Baxter during the period June 1, 1962, through May 31, 1966, paid to and received by Proby from Baxter was a portion of the purchase price paid by Baxter for the interest of Proby in the joint venture. The one-third of the gross commissions from the business paid to Proby in the year 1962 in the amount of $5,527.97, in the year 1963 in the amount of $13,323.46, and in the year 1964 in the amount of $16,928.53 were commissions earned through the efforts of Baxter and constitute additional ordinary income to him which he was required to report in his Federal income tax returns for those 3 years. Opinion While respondent has determined inconsistent deficiencies in each docket to protect the revenue, he has *218 on brief abandoned his position as stakeholder and has adopted the position of the petitioners Proby without waiving his determination of deficiency in the Proby case. Both respondent and Proby take the position that regardless of the existence or nonexistence of goodwill among the assets referred to directly or indirectly in the May 25, 1962, contract, an interest in a joint venture was purchased by Baxter and sold by Proby, and that therefore the payments represented by one-third of the gross profits of the business are properly to be accorded capital gains treatment to Proby under section 741. [1]
Baxter hinges his argument upon the contention *219 that the May 25, 1962, contract was not intended to and did not constitute a sale of anything, but was merely an extension of the former joint venture agreement, made to allow Proby capital treatment of his share of the business profits. This being true, he contends, he has properly reported as gross income only that portion of such profits (two-thirds) as devolved to him. As we understand 490 Baxter's brief, his primary attack is upon the ground that whereas Proby reported his receipts as being allocated entirely to goodwill, in fact, no goodwill was or could have been transferred between them, because none existed. From the evidence before us, we are satisfied that to an extent, Baxter's ground is correctly chosen, but the scope of the conflict is greater than he apparently realizes, for if property, capital in nature, has been conveyed, it is immaterial what label is placed upon it - it must be accorded capital treatment. As the lines of conflict are drawn, a flaw in Baxter's armor becomes immediately apparent. He has over the years in issue earned by his sole effort (with the temporary exceptions noted in our findings) the entire gross income of the business, yet he advances *220 the theory that Proby has received one-third thereof (a sizable amount in each year) as ordinary income representing his share of such income. Aside from the fact that it is incredible to us that Baxter would willingly pay over to Proby one-third of the fruits of his sole efforts, it is beyond our belief that he would pay over gross income on a joint venture basis. We note that during the existence of the admitted joint venture arrangement during 1961 and part of 1962, the division of the business income was after deduction of normal business expense therefrom. We conclude from the facts before us that the May 25, 1962, contract was not a continuation of the original joint venture under a different label and that during the years before us, payments were made thereunder by Baxter to acquire Proby's interest in the joint venture. Baxter argues that not only was there no goodwill which could be conveyed by Proby, but that the franchises upon which the business of the joint venture was based were not subject to assignment by their terms; that because nothing else of value existed to be conveyed by a sales contract, it follows that the contract in dispute did not constitute a sales contract. *221 It appears to us his premises are both faulty. While it is true that goodwill in the sense of a relationship between the joint venture and its customers did not exist here, it is clear to us that goodwill did exist between Proby in the inception of the joint venture and later between Proby and Baxter and the issuers of the signal equipment franchises under which the business was conducted. Indeed, Proby and Baxter went to some length to effectuate the transfer of that type of goodwill to Baxter. They were successful for although each franchise was terminable by the issuers upon short notice, no such termination has taken place. In any event, whatever constituted Proby's interest in the joint venture was transferred to Baxter for a purchase price equal to one-third of the gross profits earned by Baxter during the years at issue in carrying on the business of selling traffic control equipment under the franchises formerly possessed by Proby. It follows that under the principles enunciated in Lucas v. Earl, 281 U.S. 111 (1930), the amounts paid to Proby out of the gross profits of that business during each of the years at issue were first received as taxable income by *222 Baxter and paid by him to Proby as the purchase price of a capital asset and taxable to Proby as such. Decision will be entered for respondent in docket No. 4686-67. Decision will be entered for petitioners in docket No. 5512-67. 491 Footnotes
1. SEC. 741. RECOGNITION AND CHARACTER OF GAIN OR LOSS ON SALE OR EXCHANGE. In the case of a sale or exchange of an interest in a partnership, gain or loss shall be recognized to the transferor partner. Such gain or loss shall be considered as gain or loss from the sale or exchange of a capital asset, except as otherwise provided in section 751 (relating to unrealized receivables and inventory items which have appreciated substantially in value).↩